STATE ex rel. HERMAN A. HAEUSLER et al., Appellants, v. GERMAN MUTUAL LIFE INSURANCE COMPANY OF ST. LOUIS et al., Respondents.

**St. Louis Court of Appeals, December 31, 1912.**

1. **CORPORATIONS: Inspection of Books by Stockholders: Common Law Right.** A stockholder of a corporation has the right at common law to inspect the corporate books and records at a proper time and place and for a definite and proper purpose.

2. ————: ————: ————: **Enforcing Right: Mandamus.** The enforcement by mandamus of the common law right of a stock-

holder of a corporation to inspect the corporate books and records rests in the sound discretion of the court.

3. ————: ————: ————: **Right to Use Accountants and Stenographers.** A stockholder of a corporation who has the right to inspect the corporate books and records may avail himself of accountants and stenographers in making copies from the books and records.

4. **LIFE INSURANCE: Mutual Company: Right of Policy Holder to Inspect Books: Corporations.** A policy holder in a mutual life insurance company, the charter of which makes each policy holder a member of the corporation with one vote at elections of trustees, and which requires the officers to take an account of its affairs every five years and credit each policy holder with his equitable part of the profits, although not a technical "stockholder," nevertheless possesses the same right that a stockholder of a corporation has at common law to inspect the books and records of the company for a proper and definite purpose and at a proper time and place.

5. **CORPORATIONS: Inspection of Books by Stockholders: Common Law Right: Enforcing Right: Improper Purpose: Mandamus.** Though mandamus in aid of a stockholder's common law right to inspect the books and records of the corporation should not be denied merely on the ground that the petitioner is a business rival of the corporation, or because he is a stockholder in a rival concern, or because he is on unfriendly terms with the officers of the corporation, yet it should be denied, in the discretion of the court, where the real object is to aid the petitioner in injuring the business of the corporation for the benefit of a business rival, or where, generally speaking, it appears that his purpose in seeking the inspection is improper, evil, malicious, frivolous or unlawful.

6. **MANDAMUS: Action at Law.** A proceeding by mandamus is one at law.

7. **APPELLATE PRACTICE: Conclusiveness of Findings of Fact: Mandamus.** The findings of the trial court in a proceeding by mandamus are binding on the appellate court, where there is substantial evidence to support them.

8. **CORPORATIONS: Inspection of Books by Stockholders: Enforcing Right: Mandamus: Joinder of Parties Plaintiff.** An action by mandamus, brought by several policy holders in a mutual life insurance company to compel an inspection of the books and records of the company, cannot be maintained unless the plaintiffs have a common and joint interest in the matter in litigation; and whether they had a right to so join in the case at bar, *quaere*.

9. ———: ———: ———: Mandamus: Joinder of Parties: Improper Motive of Some: Effect on Others. Where several stockholders of a corporation, who had the right to proceed separately and individually, joined together in a mandamus proceeding to compel the granting of an inspection of the corporate books and records, as though they had a common right, and the purpse of some of them in seeking the inspection was shown to be an improper one, a writ was properly denied, although the other plaintiffs would have had a clear right to a writ if they had proceeded alone.

10. ———: ———: ———: Mandamus: Improper Motive: Sufficiency of Evidence. In an action by mandamus, brought by several policy holders of a mutual life insurance company to compel the granting of an inspection of the books and records of the company, held that the finding of the trial court, that some of the plaintiffs were shown to be actuated by an improper purpose, was warranted by the evidence, and further held that the denial of the writ was proper, not only as against the plaintiffs found to be actuated by an improper purpose, but also as against the other plaintiffs, who were not found to be actuated by such purpose.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*Wagner & Miller* for appellants.

(1) Each stockholder of a corporation is entitled, under the general rule of the common law (which has not been abridged by statute), to inspect its books, papers and records and to make extracts and copies therefrom, including a list of its stockholders' names and addresses; and if such right be wrongfully denied him, it may be enforced by mandamus; the writ being granted, in the sound discretion of the court, to protect his interest as such stockholder, where it is sought in good faith and for a proper purpose. State ex rel. v. Railroad, 29 Mo. App. 301; State ex rel. v. Park Assn., 29 Mo. App. 326; State ex rel. v. Laughlin, 53 Mo. App. 542; State ex rel. v. Transit Co., 124 Mo. App. 111; State ex rel. v. Lazarus, 127 Mo. App.

401; State ex rel. v. Donnell, 129 Mo. App. 206; Huyler v. Cattle Co., 40 N. J. Eq. 392; State ex rel. v. Oil Works Co., 28 La. Ann. 204; In re Steinway, 159 N. Y. Supp. 250; Kuhbach v. Cut Glass Co., 220 Pa. St.; (2) This right may be exercised by the stockholder in person, or through his agent or attorney; and with the assistance of an expert accountant and a stenographer if the books and records are voluminous or complicated. State ex rel. v. Park Assn., supra; State ex rel. v. Transit Co., supra; Volksblatt Co. v. Hoffmeister, 62 Ohio St. 189; Clawson v. Clayton, 33 Utah, 266; State ex rel. v. Oil Works Co., supra; Ellsworth v. Dorwart, 95 Iowa, 108; People ex rel. v. Ferry Co., 33 N. Y. Supp. 244; 10 Cyc. 958. (3) The relators, as policyholders and members of respondent, a mutual life insurance company, and entitled to vote at its elections of trustees and to share in its profits and assets are, in effect, stockholders of the corporation, with the right of such inspection of and copies from its books and records, within the general rule of the common law as above stated. People ex rel. v. Life Insurance Co., 97 N. Y. Supp. 465; McClintock v. Republicans, 210 Pa. St. 115, 68 L. R. A. 459; State ex rel. v. Oil Works Co., supra. (4) The relators, as such policyholders and members, demanding the right to such inspection and copies in good faith and for proper purposes, it is no defense to the writ and no justification or excuse for the denial of such relief: (a) That some of relators may be engaged, as competitors of the company, in certain lines of its business. State ex rel. v. Laughlin, supra; State ex rel. v. Lazarus, supra; Cobb v. Lagarde, 129 Ala. 588; Kubach v. Cut Glass Co., supra; Hodder v. Hogg Co., 72 Atl. (Pa.) 553. (b) Or that some or all of the relators may be on unfriendly relations with the trustees or officers of the company. State ex rel. v. Lazarus, supra; Cobb v. Lagarde, supra. (c) Or that the books and records sought to be inspected may contain matter of a con-

fidential nature, between the company and its policy-holders or others. State ex rel. v. Laughlin, supra. (d) Or that relators could have inspected the company's general balance statement book, or its annual reports to the State Insurance Department, or the report (in 1908) of an examining actuary to said department; or that they could have sent out communications to the policyholders, under the supervision or censorship of the company's attorney; or that an appointment or election to fill a vacancy upon the board of trustees may have been tendered one or more of them; or that their former request for the list of names and addresses, not the basis of this suit, was not pressed at that time. State ex rel. v. Railroad, supra, People ex rel. v. Goldstein, 56 N. Y. Supp. 306; Huyler v. Cattle Co., supra. (5) The demurrer for misjoinder of parties relator and causes of action (the second count of the return, is without merit. (a) Two or more relators may be properly joined in mandamus; and the interests of the present relators in the subject-matter of this proceeding are not of such separate character as to prevent their joinder herein. State ex rel. v. Fraker, 166 Mo. 130, 142; Merrill v. Suffa, 42 Colo. 195. (b) The demurrer was waived by pleading to the merits in the same return. State ex rel. v. Moss, 35 Mo. App. 441; Long v. Towl, 41 Mo. 398; Donahue v. Bragg, 49 Mo. App. 273; Taber v. Wilson, 34 Mo. App. 89.

*Schnurmacher & Rassieur* for respondents.

(1) The right of a stockholder to examine the books of a domestic stock corporation is an absolute right conferred on the stockholder by statute. But the right of a member of a mutual insurance company, having no capital stock, to examine its books, is not a right created by statute. Such a member has only such rights as are possessed by members or stock-

holders of corporations at common law. It is not an absolute right, and the request must be addressed to the sound discretion of the court. People ex rel. v. Life Ins. Co., 111 App. Div. (N. Y.) 183; State ex rel. v. Lazarus, 127 Mo. App. 401. (2) The rights of the several relators being separate and not joint, a joint action cannot be maintained by them. State ex rel. v. Fraker, 166 Mo. 130; Goodwin v. Sherer, 145 Ala. 501; State v. Simmons, 50 Atl. 213; Wright v. Comrs., 6 Mont. 29; High. Extra. Leg. Rem., secs. 434, 439. This defense was not waived by pleading it in the return along with other defenses. State ex rel. v. Railroad, 114 Mo. 289. Even in ordinary civil actions a plea in abatement is not waived by pleading to the merits in the same answer. Trust Co. v. Railroad, 195 Mo. 682. (3) The evidence on the issues of fact arising in the case is conflicting, and therefore the appellate court, in this action at law, is bound by the findings of the trial court.

NORTONI, J.—This is a proceeding in mandamus. The application was made to the circuit court, which issued an alternative writ, but on hearing the evidence, declined to make it peremptory. From this judgment relators prosecute the appeal.

Respondent German Mutual Life Insurance Company of St. Louis is a corporation organized under the provisions of a special act of the Legislature of Missouri, approved November 23, 1857. [See Laws of Missouri, 1857, Adj. Sess., p. 459.] This act of the Legislature authorized the organization of the company as a mutual life insurance company and the statute referred to constitutes its charter. Respondent Edwin J. Meyer is secretary of the insurance company and one of its trustees. The several relators are policyholders in the company.

By virtue of the provisions of the charter, the board of trustees consists of sixteen members who are

policyholders in the company. These trustees hold
their term for four years each and eight of their num-
ber are to be elected every two years. By section 9 of
the act of incorporation, it is provided that all persons
who shall thereafter insure with the corporation shall
be members thereof and entitled to vote at all elections
of trustees so long as they shall respectively remain in-
sured therein. Each person holding a policy in force
at the time of election is entitled to one vote at elections
of trustees in person or by written proxy. The
board of trustees are authorized to select from their
number the officers of the corporation, and such offi-
cers and board are given power and authority to direct
the affairs of the company. Other provisions of the
charter require that the funds of the corporation
shall be invested in real estate loans, bonds, mortgag-
es, etc. By section 20 of the charter, it is provided
that the officers of the company shall, every five years,
cause a balance to be struck and credit each member
with an equitable share of the profits of the business.

It appears that relators, for various reasons, be-
came dissatisfied with the management of the com-
pany and organized themselves into a voluntary as-
sociation which they denominated as the Policy Hold-
ers' Protective Association, with a view of placing
some of their members on the board of trustees of the
company and of investigating into its affairs. Sev-
eral demands were made upon the respondent com-
pany and its secretary to permit relators to investi-
gate the books and records of the company, to copy
therefrom a list of all its policyholders, together
with the post-office address of each, and a list of all
of the loans which the company had then outstanding
on real estate and other investments. Upon these re-
quests being denied, relators sued out the alternative
writ of mandamus, and made numerous charges
against the management of the company. In due time,
a proper return was made to the alternative writ, and

a hearing had in the circuit court. The record is voluminous and discloses that many witnesses were examined touching the matter. At the conclusion of the hearing the circuit court declined a peremptory writ of mandamus, and from this judgment relators prosecute the appeal.

It is conceded here that relators are without the aid of a statute declaring an absolute right in them as policyholders and members of the corporation to investigate its affairs or make copies from its books. They, therefore, rely exclusively upon the common law right of a stockholder in respect of such matters. No one can doubt that a stockholder of a corporation has the right at common law to inspect and examine the books and records of his corporation at a proper time and place and for a proper purpose. However, while the statute frequently gives an absolute right in such cases, the right of inspection at common law is not such, but can only be exercised for a definite and proper purpose, and its enforcement by the writ of mandamus always rests in the sound discretion of the court. These principles we have frequently declared heretofore. [State ex rel. Watkins v. Donnell Mfg. Co., 129 Mo. App. 206, 107 S. W. 1112; State ex rel. English v. Lazarus, 127 Mo. App. 401, 105 S. W. 780; State ex rel. Johnson v. St. Louis Transit Co., 124 Mo. App. 111, 100 S. W. 1126; 26 Am. & Eng. Ency. Law (2 Ed.), 951, 952.] It is true, too, that when this right exists in the stockholder, he may avail himself of accountants, stenographers, etc., in making copies from the books and records of the company. [State ex rel. Johnson v. St. Louis Transit Co., 124 Mo. App. 111, 100 S. W. 1126.]

It is urged on the part of respondents that this right of a stockholder in a corporation does not obtain in favor of a policyholder in a mutual insurance company, and the case of People ex rel. Venner v. The New York Life Ins. Co. et al., 111 App. Div. (N. Y.)

183, is relied upon to sustain the proposition asserted. It seems that a divided court, one judge dissenting, denied the relief sought in that case, but the trend of decision in this State would seem to suggest a contrary view. From all that has been written on the subject in this jurisdiction, it appears our courts entertain a broad view on the subject. It is true, in the strict sense of the term, that the policyholders in this mutual life insurance company are not stockholders therein, for, indeed, there is no stock in the technical sense. But though such be true, by the express terms of the charter, each policyholder is made a member of the corporation and given one vote at each election of trustees. By analogy, the policyholder occupies a position similar to that of stockholder in a private corporation, for the policyholder, like the stockholder, is a member of the corporation and has a voice in the election of its directors. Furthermore, every five years the managing officers of this company are required to take an account of its affairs and credit each policyholder with his equitable portion of the profits of the business, and in this the analogy as to a stockholder again appears. It is equally as important for a policyholder in a mutual company to investigate its affairs for a proper purpose and in proper circumstances as it is for a stockholder in a private corporation to investigate the affairs of his company for a like purpose and under like circumstances. When the motive of the policyholder in asserting this right and purpose is scrutinized and guarded by the courts, as in the case of a stockholder, as it should be, we see no reason why the principle ought not to obtain with respect to those persons who are members of mutual organizations such as that involved here. This is the view of the Supreme Court of Pennsylvania, declared in McClintock v. Young Republicans, 210 Pa. 115; s. c., 68 L. R. A. 459. And when the analogies are considered between the rights of the stockholders in a private cor-

poration and the policyholder in a mutual insurance company, such as this one, we are unable to perceive why the principle should not obtain alike in both cases.

But though such be true, a mandamus will not be awarded in aid of this right of inspection where it is shown that the petitioner's purpose in seeking the inspection is an improper or evil one or that it is malicious or frivolous or unlawful. Mandamus is frequently denied by the courts in such cases, for the reasons above suggested. [26 Am. & Eng. Ency. Law (2 Ed.), 955; 2 Cook on Corporations (6 Ed.), sec. 515; State ex rel. Johnson v. Transit Co., 124 Mo. App. 111, 100 S. W. 1126.] Where it appears the real object of the examination is to obtain information and aid the petitioners in injuring the business of the corporation for the benefit of a business rival, it is proper for the court, in the exercise of a sound discretion, to refuse the writ. [See In re Kennedy, 75 App. Div. (N. Y.) 188; see, also, In re Coats, 73 App. Div. (N. Y.) 178.] So, also, it was declared proper to refuse the writ where it appeared that relator, who was a debtor, was endeavoring, by means of his position as a stockholder, to extract material for a defense and was, therefore, not asserting his right as a stockholder for a good purpose. [See Investment Co. v. Eldridge, 2 Pa. Dist. Rep. 394.] Even where there exists a statutory right to such inspection, which, as a general rule, is regarded as practically an absolute right, the courts usually declare that it is proper to deny a mandamus in aid of it when it appears that the inspection is sought for mere curiosity or for an unlawful purpose. [See 26 Am. & Eng. Ency. Law (2 Ed.), 952; Weihenmayer v. Bitner, 88 Md. 325; Stone v. Kellogg, 165 Ill. 192, 56 Am. St. Rep. 240.]

This is a suit at law and the finding and judgment of the trial court on questions of fact may not be overturned and set aside here, if it appears that there is

substantial evidence to support it. From what appears in the record, it would seem that the trial court was of the opinion that the relators desired an inspection and copies of the company's list of policyholders and loans for an improper purpose. It is entirely clear that the evidence supports this finding of fact, with respect to a number of the relators at least. It appears that the relators, together with a few other policyholders, organized a voluntary association, which they denominated as the Policy Holders' Protective Association. These relators are members of the association and are in a measure representing its membership. It appears that several of the relators have grievances of different kinds and character against some of the managing officers of the respondent company., The Policy Holders' Protective Association seems to have been organized around these grievances. One Redlich had been in the employ of the respondent company as general agent, until he quit the company, bearing a grudge against it. One Snyder had been an agent under Redlich and was made general agent for the company after him. Thereafter Snyder became disgruntled and was in constant conference with Redlich, who was no longer a policyholder in the company and was soliciting insurance for the Northwestern, a rival life insurance company. Snyder was discharged by the respondent company, whereupon he accepted employment with the Northwestern Life Insurance Company and accumulated a number of proxies for the purpose of voting them against the management of respondent company in the ensuing election. Soon thereafter these disgruntled agents came in contact with Mr. Wall, a policyholder, and one of the relators here, who also had a grievance. Mr. Wall had sought the presidency of the respondent company, but was unsuccessful in that behalf. By securing a number of proxies and voting them, he also had sought a place as a member of the board of trustees. These

gentlemen, operating together, organized the Policy Holders' Protective Association, and the several demands made for an inspection and copy of the books and records of the company were made thereafter by Mr. Wall, who had been elected as chairman of a committee representing the Policy Holders' Protective Association. Other relators, Tombridge and Leiendecker, also had grievances against the company and its management, it is said, because the company preferred not to buy loans from them. Schaeffer, another one of the relators, had a slight grievance against the company as well. Mr. Bolin, general agent for the Union Central Life Insurance Company, a rival concern, though not one of the relators here, was also a member of the Policy Holders' Protective Association and it seems was in touch with the entire situation. Mr. Wall, one of the relators, is connected with the Title Guaranty Company and in charge of their loan department and particularly in charge of making loans for the Travelers' Life Insurance Company. Furthermore, relators Tombridge, Leiendecker and Wolf seem to be financial agents also interested in the matter of making loans on real estate. The repondent company has several hundred thousand dollars in loans outstanding secured on real estate. Of course, a list of all these borrowers, together with their post-office addresses and the expiration of such loans, would constitute a valuable asset in the hands of a rival concern or an agent of another company engaged in making like loans. So, too, a list of the policyholders of this company, together with the post-office address of each, would constitute a valuable asset in the hands of those who are engaged in the life insurance business for other companies.

Though there is much evidence to that effect, it is by no means uniform that all of these relators asserted their right to an inspection and copies of the records with a good purpose. Indeed, the entire evidence

suggests a strong inference to the contrary as to re-
lators Wall, Tombridge, Leiendecker and Wolf and
some of the other gentlemen, who, though in the back-
ground, are members of the Policy Holders' Protective
Association and in conjunction with whom relators ap-
pear to be acting in pressing the suit.

However, throughout the record there is not a
suggestion of an improper motive against relators
Haeussler and Walker. If the right to a mandamus
as to these two gentlemen is denied, it must be on the
ground that they have joined with their co-relators
therefor in this proceeding. It is certain that each
separate relator has an individual right, by virtue
of his membership in the company, through being a
policyholder, and it may be that it is incompetent for
them to join in this proceeding. The precise question
is made in the case but it is a close one and we are not
compelled to decide it as the judgment may be other-
wise sustained. Whether it is competent or not for
these relators, possessing separate individual rights,
to join in this proceeding, it appears that they have
voluntarily done so and their rights should be vindi-
cated or denied accordingly. At any rate, the parties
have elected to proceed as though they have a common
and joint interest in the subject-matter and contro-
versy, in which event alone such joinder is proper.
[See 13 Ency. Pl. & Pr. 645.] Those whose purposes
and motives are proper ones, having joined their de-
mand with others whom the court found to entertain
an evil or improper purpose in seeking the inspection,
should be deemed to have forfeited their rights in the
premises and voluntarily submitted their cause to be
contaminated with the evil intent of others. In this
view, the peremptory writ was very properly denied
to all of the relators, upon it appearing to the court
that some of them sought it for ulterior purposes which
might prove detrimental to the interests of the re-

spondent insurance company and would inure wholly to their private gain.

It is true that the right of inspection should not be denied merely on the ground that the stockholder seeking the inspection is a business rival of the corporation.    [Weihenmayer v. Bitner, 88 Md. 325.] It is true, too, that such right should not be denied merely because the relator is a stockholder in a rival concern.    [See Cobb v. Lagarde, 129 Ala. 488; Johnson v. Langdon, 135 Calif. 624.]    'Neither is the right to be denied alone on the ground that the stockholder is on unfriendly terms with the officers of the company whose records are sought to be inspected.    [Meysenburg v. People, 88 Ill. App. 328; Ellsworth v. Dorwart, 95 Ia. 108, 58 Am. St. Rep. 427; see, also, 26 Am. & Eng. Ency. Law (2 Ed), 952.]    But in any and all of these cases, the writ of mandamus should be denied, in the discretion of the court, when it is sought to vindicate the common law right of a stockholder, if it appears to the satisfaction of the court that the purpose is an improper one.    [See Weihenmayer v. Bitner, 88 Md. 325.]

However laudable the purpose of relators Haeusler and Walker may be, the record is replete with evidence tending to show that their co-relators above mentioned sought to make copies of the records and copies of the list of policyholders' post-office addresses thereof and mortgages and post-office addresses of borrowers for an improper purpose, and purposes, too, which were detrimental to the best interests of the respondent insurance company.    We do not find such to be the facts, but only say that the record abounds with evidence tending to support the judgment of the circuit court on that theory of the law, and this being true, we are concluded here by the finding of the trial court on an issue of fact pertaining to which the evi-

dence was highly conflicting. The judgment should, therefore, be affirmed. It is so ordered. *Reynolds, P. J.*, and *Caulfield, J.*, concur.