STATE OF MISSOURI at the relation of RAY B. HORTON v. T. M. BOURKE, PAUL FORGRAVE, HARRY F. PARKER, E. T. BOHAN, MALVERN CLOPTON, E. SANBORN SMITH and W. L. BRANDON, Members of the STATE BOARD OF HEALTH, Appellants.—129 S. W. (2d) 866.

Division One, June 14, 1939.

*Roy McKittrick,* Attorney General, and *Arthur O'Keefe,* Assistant Attorney General, for appellant; *Stanley Clay* of counsel.

*Kelley & Tatum* for respondent.

BRADLEY, C.—This cause is in mandamus and is against the State Board of Health. An amended alternative writ commanded the board to "vacate and annul all of the orders made" by it and pertaining to the revocation of the license of relator to practice medicine and surgery in this State, and to reinstate said license, or to show cause why such should not be done.

We have named in the caption the personnel of the board as would appear from a stipulation filed November 25, 1938, as to substituted appellants. Below, respondent was designated as relator and to avoid confusion we refer to respondent as relator, and to appellants as the State Board of Health, or just the board.

The original petition was filed October 20, 1933, and on same day an alternative writ of mandamus was issued. December 16, 1933, motion to quash the alternative writ was filed. Nothing further appears until December 31, 1935, when an amended petition was filed; an amended alternative writ was issued, returnable on day of issue; a general and a special demurrer were filed to the amended alternative writ, and were overruled; return, answer, and reply were filed; and the cause was tried, and by the judgment rendered the amended alternative writ was made peremptory. The board appealed.

The judgment is as follows: "It is by the court considered and adjudged that the amended alternative writ of mandamus heretofore issued should be made permanent and that a writ of peremptory mandamus be issued commanding and directing the State Board of Health of the State of Missouri and each and all of the members thereof (naming them) to forthwith vacate and annul all of the orders made by them, the members of the State Board of Health of the State of Missouri, or by their predecessors in office as members of

said State Board of Health of the State of Missouri, concerning the revocation of the relator's license to practice medicine and surgery in the State of Missouri, and to forthwith issue unto the relator a license to practice medicine and surgery in the State of Missouri, or reinstate relator's license number 19190, heretofore revoked, and that all of the respondents make immediate return to this writ and report to this court their compliance with the commands contained in said peremptory writ of mandamus.''

Relator has filed here a motion to dismiss the appeal, and the motion was taken with the case. Our Rule 16 provides that if an appellant in any civil case fails to comply with Rules 11, 12, 13, and 15, ''the court, when the cause is called for hearing, will dismiss the appeal, or writ of error, or, at the option of the respondent, continue the cause at the cost of the party in default.'' There are five alleged grounds in the motion to dismiss, but only the fifth deals with grounds embraced in the Rules mentioned. The first two grounds alleged go to what is shown in the abstract as to the filing and overruling of a motion for a new trial. In the third ground, complaint is made because there is printed in the abstract the respective petitions, answers, and opinions in Horton v. Clark et al., 316 Mo. 770, 293 S. W. 362, and in State ex rel. Horton v. Clark et al., 320 Mo. 1190, 9 S. W. (2d) 635. The fourth ground goes to what appears in the abstract as to demurrers to the evidence at the close of relator's case and at the close of the whole case. The fifth ground is to the effect that the statement is not a substantial compliance with the requirements of Rule 15. The board, on the defense of *res adjudicata,* pleaded, by reference, the pleadings and opinion in each of the two cases mentioned. It is conceded that the present case is here on the record proper only, and in such situation the statement is sufficient. The other grounds alleged are not sufficient to justify dismissal of the appeal. In the situation, the cause should be considered on the record proper, Noble et al. v. Brinson et al., 231 Mo. 640, 132 S. W. 1068, and the motion to dismiss the appeal should be and is overruled.

The board's chief contentions are that mandamus will not lie and that the matters and things complained of by relator are *res adjudicata.*

We do not deem it necessary to set out the pleadings or the substance thereof. The court made a finding of facts, and from this it appears: That on October 18, 1922, relator, on written examination, was licensed to practice medicine and surgery in this State; that, after being so licensed, he practiced medicine and surgery in this State until May 27, 1927, except when ''studying medicine and surgery in the University of Budapast, Hungary;'' that on May 27, 1927, at a hearing before the board, sitting in St. Louis, relator's license to practice medicine and surgery in this State was revoked.

Since there is nothing here except the record proper, it is sufficient,

we think, to say, without detailing at length, the facts found, that the order revoking relator's license was set aside on the ground that said order was brought about and procured by fraud. It was found that the board and certain named persons entered into a conspiracy whereby these persons would give false evidence against relator at the hearing before the board on the occasion when relator's license was revoked. And it was found that these persons, pursuant to the alleged conspiracy, did appear before the board and testify falsely against relator.

It was also found that relator, "in obtaining a license to practice medicine and surgery (in this State) . . . made no misrepresentations of facts concerning the relator's qualifications, of any kind or character, and practiced no fraud upon the board . . . or upon any member thereof." And it was found that on May 10, 1922, relator was licensed by the State Medical Board of Arkansas to practice medicine and surgery in that State, and that on October 18, 1933, he properly petitioned the board (in Missouri) for a license, under the rule of reciprocity; and that at said time it was customary for the board to issue licenses, under the rule of reciprocity, to those physicians and surgeons who held licenses to practice medicine and surgery in the State of Arkansas; that the board refused to issue a license to relator under the rule of reciprocity, and that in so refusing the board grossly abused its discretion.

It appears in the finding of facts that on June 3rd, 4th, and 5th, 1935, relator took and successfully passed a written examination "through the office of the State Superintendent of Public Schools of Missouri," and that on June 12, 1935, the superintendent, by reason of said examination, issued a certificate to the relator showing "the establishment of 15½ units of high school work." And it appears that in the year 1924, "relator was graduated from the school of medicine of the University of Budapest, Hungary."

As appears from the finding of facts, relator was licensed to practice medicine and surgery in the State of Arkansas, and sought a license in this State under the rule of reciprocity, but was refused. Section 9113, Revised Statutes 1929 (Mo. Stat. Ann., sec. 9113, p. 5075), among other things, provides that the State Board of Health "*may*, under the regulations established by the board admit without examination legally qualified practitioners of medicine who hold certificates to practice medicine in any state or territory of the United States or the District of Columbia with equal requirements to the State of Missouri, and that extend like privileges to legally qualified practitioners from this state upon the applicant paying a fee of fifty dollars ($50.00)." (Italics ours.)

It is quite plain from Section 9113 that the observance and recognition of the rule of reciprocity lies within the sound discretion of the board, and, as appears, it was found that the board "grossly.

abused'' its discretion in refusing to issue to relator a license under the rule of reciprocity. However, it also appears that the amended petition did not ask that the board be compelled to issue a license to relator under the rule of reciprocity, and the amended alternative writ did not command that the board show cause why it should not be compelled to issue a license to relator under the rule of reciprocity. Also, it will be noted, from the judgment set out, supra, that the board was not directed to issue to relator a license under the rule of reciprocity. Mandamus is an action at law (38 C. J., pp. 543, 545, secs. 6, 12; State ex rel. Haeussler et al. v. German Mut. Life Ins. Co. et al., 169 Mo. App. 354, 152 S. W. 618), hence, in the situation, the question of a license, under the rule of reciprocity, is not before us.

Will mandamus lie to set aside, on the ground of fraud, the order of the board revoking relator's license and compel the board to restore or reinstate the revoked license? The writ of mandamus has been ''denominated a hard-and-fast writ, an unreasoning writ, a cast-iron writ, the right arm of the court. It is essentially the exponent of judicial power and hence is reserved for extraordinary emergencies. It does not issue except in cases where the ministerial duty sought to be coerced is simple and definite arising under conditions admitted or proved and imposed by law. It does not issue where the right is doubtful or where there is another adequate remedy.'' [State ex inf. Barker, Attorney General, ex rel. Kansas City v. Kansas City Gas Co., 254 Mo. 515, l. c. 532 (and cases there cited), 163 S. W. 854.] The cases holding that mandamus will not lie where there is any other adequate remedy are numerous. Some of them, in addition to the one cited, are State ex rel. Porter v. Hudson, 226 Mo. 239, 126 S. W. 733; State ex rel. Rainwater v. Ross, 245 Mo. 36, 149 S. W. 451, 36 Ann. Cas. 1913E, 978; State ex rel. Snow Steam Pump Works et al. v. Homer, 249 Mo. 58, 155 S. W. 405; State ex rel. Schneider v. Bourke et al., 338 Mo. 86, 89 S. W. (2d) 31, l. c. 32.

It will be observed that the court, in its judgment, directed the board ''to forthwith vacate and annul all of the orders made by them . . . or by their predecessors . . . concerning the revocation of the relator's license to practice medicine and surgery in the State of Missouri.'' Let us assume that mandamus was the proper remedy, and that there had been no appeal. In such situation could it be contended, with good reason, that relator would have been without authority to practice medicine and surgery in this State, until the board made an order vacating the order revoking his license. We do not think so. The effect of the court's judgment, assuming mandamus the proper remedy, was to set aside the order revoking relator's license and to revive and revalidate the revoked license.

Relator relies upon State ex rel. McCleary v. Adcock et al., 206 Mo. 550, 105 S. W. 270, and State ex rel. Johnston v. Lutz et al., 136 Mo. 633, 38 S. W. 323, to support his contention that mandamus, in the

situation, will lie. These cases were in mandamus to compel the issue of licenses to practice medicine and surgery in this State. In the McCleary case the only disputed question was as to when the relator matriculated in a medical college. All other requisites for a license were admitted. If the relator had matriculated prior to March 12, 1901, he was entitled to a license; if he had not so matriculated, he was not entitled to a license. The opinion recites that the evidence was overwhelming that matriculation was prior to March 12, 1901, and it was held that the board had acted arbitrarily in refusing a license, and the alternative writ was made peremptory.

The gist of the Johnston case is stated in headnote 1 [136 Mo. 633] as follows: "The state board of health cannot refuse a certificate permitting an applicant to practice medicine in this State because the medical college from which he received his diploma had not complied with a resolution of the board requiring medical colleges by a certain time to furnish the board with a list of its matriculates and the basis of their matriculation, where the evidence shows that the applicant graduated before the college received notice of the resolution." It was held that the license was refused on grounds that did not involve discretion or judgment and the alternative writ was made peremptory.

The distinction between the McCleary and Johnston cases and the present case is apparent. Relator does not call our attention to any case and we find no case where mandamus has been invoked to set aside a record. It appears from the board's return that the question of relator having an adequate remedy, other than by mandamus, was raised below, hence there is no question of waiver on that point. In the situation, we are constrained to rule that mandamus will not lie to redress whatever wrong, if any, was done to relator by the board in revoking his license. His remedy, if one survives to him, as to said order, is a suit in equity to set it aside on the ground of fraud.

It is not necessary to rule the question of res adjudicata, but we do not think it amiss to refer briefly to relator's troubles with the State Board of Health. An appellate court takes judicial notice of its own records. [Bushman et ux. v. Barlow et al., 321 Mo. 1052, 15 S. W. (2d) 329, l. c. 332, and cases there cited.] Numerous cases so hold. Horton v. Clark et al., 316 Mo. 770, 293 S. W. 362, was an injunction suit against the board to enjoin a hearing on the original complaint filed against relator here. A temporary restraining order was granted, but at a trial on the merits the temporary injunction was dissolved. The cause was appealed to this court and the judgment was affirmed.

The original complaint was filed against relator on June 9, 1925. September 12, 1925, he filed the injunction suit. Opinion in the injunction suit was handed down February 15, 1927, and on March 22, 1927, an amended complaint was filed with the board against relator and it was on the amended complaint that the board revoked relator's

license on May 27, 1927. [See State ex rel. Horton v. Clark et al., 320 Mo. 1190, 9 S. W. (2d) 635.] And we might say here that it appears from the last mentioned case that this court held that the board had sufficient evidence before it, exclusive of the evidence of the three alleged conspiring witnesses, to support revocation of relator's license.

The board also makes the point that relator has been guilty of laches and on that ground should be precluded, but it is not necessary to rule that point and we do not.

The judgment should be reversed and it is so ordered. *Hyde, C.,* concurs; *Dalton, C.,* not sitting.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Clark, J.,* not sitting.